# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| SHANE R. STEPHENSON, | |
| Plaintiff, | No. C18-73-LTS |
| vs. | **MEMORANDUM OPINION AND ORDER** |
| ANDREW M. SAUL, Commissioner of Social Security,[1] | |
| Defendant. | |

_____

Plaintiff Shane R. Stephenson seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his application for disability income benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. § 401 et seq. (the Act). Stephenson contends the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision that he was not disabled during the relevant period. For the reasons that follow, the Commissioner's decision will be reversed and this case will be remanded for further proceedings.

## I. BACKGROUND

Stephenson was born in 1975. He completed high school and has previously worked as a hand packager, combination of machine packager and industrial truck operator, and laundry worker. AR 31, 41. He filed his application for DIB on June 1, 2015, alleging a disability onset date of January 9, 2015, due to a broken right hip and

---

[1] Andrew M. Saul was sworn in as Commissioner of Social Security on June 17, 2019. Pursuant to Federal Rule of Civil Procedure 25(d), he has been substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit.

meningitis resulting in brain damage, speech difficulties and right-sided weakness. *Id.* at 51. Stephenson's claims were denied initially and on reconsideration. *Id.* at 47-68. He then requested a hearing before an Administrative Law Judge (ALJ). ALJ P.H. Jung conducted an in-person hearing on June 1, 2017. *Id.* at 27-46. Stephenson and a vocational expert (VE) testified. The ALJ issued a decision on September 26, 2017. *Id.* at 15-22. He determined that Stephenson was unable to perform any past relevant work. *Id.* at 20. However, he found that there was other work available in significant numbers in the national economy that Stephenson could perform, such as suture winder, clerical mailer and touch-up screener. *Id.* at 21-22.

Stephenson sought review by the Appeals Council. *Id.* at 1-8. It denied review on May 16, 2018. *Id.* at 1. The ALJ's decision thus became the final decision of the Commissioner. *Id.* at 1; 20 C.F.R. § 404.981. On July 14, 2018, Stephenson filed a motion for leave to proceed in forma pauperis and complaint in this court seeking review of the Commissioner's decision. The parties have submitted a stipulation of facts and briefed the issues. *See* Doc. Nos. 12, 13, 14, 15. The matter is fully submitted.

## II. DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505. An individual has a disability when, due to his physical or mental impairments, he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices or

other factors, the ALJ will still find the claimant not disabled. 20 C.F.R. § 404.1566(c)(1)-(8).

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Id.* § 404.1520; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial" work activity involves physical or mental activities. "Gainful" activity is work done for pay or profit. 20 C.F.R. § 404.1572(a).

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and medical impairments. If the impairments are not severe, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is not severe if "it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a); *see also* 20 C.F.R. § 404.1520(c); *Kirby*, 500 F.3d at 707.

The ability to do basic work activities is defined as having "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; (2) capacities for seeing, hearing and speaking; (3) understanding, carrying out and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* § 404.1521(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).

Third, if the claimant has a severe impairment, then the Commissioner will determine its medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled regardless of age, education and work experience. 20 C.F.R. §§

404.1520(a)(4)(iii), 404.1520(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of his past relevant work. If the claimant cannot do his past relevant work then he is considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4). Past relevant work is any work the claimant has done within the past 15 years of his application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. *Id.* § 404.1560(b)(1). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *See* 20 C.F.R. § 404.1545(a)(1). The RFC is based on all relevant medical and other evidence. *Id.* § 404.145(a)(3). The claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Id.* If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education and work experience. *Id.* §§ 404.1512(f), 404.1520(a)(4)(v). The Commissioner must show not only that the claimant's RFC will allow him to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can make the adjustment, then the Commissioner will find the claimant is not disabled. *Id.* At step five, the Commissioner has the responsibility of developing the claimant's complete medical history before making a determination about the existence

of a disability. *Id.* § 404.145(a)(3). The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

If after these five steps the ALJ has determined the claimant is disabled but there is medical evidence of substance use disorders, the ALJ must decide if that substance use is a contributing factor material to the determination of disability. 42 U.S.C. § 423(d)(2)(C). The ALJ must then evaluate the extent of the claimant's limitations without the substance use. *Id.* If the limitations would not be disabling, then the disorder is a contributing factor material to determining disability and the claimant is not disabled. 20 C.F.R. § 404.1535.

### III. THE ALJ'S FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2019.

2. The claimant has not engaged in substantial gainful activity since January 9, 2015, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: femoral neck fracture status post open reduction internal fixation of right hip; hypertension (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk up to 2 hours in an 8-hour workday; sit for up to 6 hours in an 8-hour workday; never climb ladders, ropes or scaffolds; never kneel, crouch, or crawl; occasionally climb ramps, stairs, balance, and stoop; avoid frequent exposure to extreme cold, wetness, vibration, hazards, machinery, and heights.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on August 9, 1975, and was 39 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

AR 17-21.

## IV. *THE SUBSTANTIAL EVIDENCE STANDARD*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without

being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## V.     DISCUSSION

Stephenson argues the ALJ made the following errors:

1. Not finding Stephenson's cognitive impairments, whether classified as a learning disorder, mild intellectual disability, or borderline intellectual functioning, to be a severe impairment

2. Not providing good reasons for the weight afforded to Dr. Manshadi's opinions

*See* Doc. No. 13. Stephenson also argues the ALJ was not appointed in a constitutional manner and the decision should be vacated and Stephenson's claim remanded to be decided by a new ALJ who was properly appointed. *Id.* I will address these arguments separately below.

### A.     *Stephenson's Alleged Cognitive Impairments*

Stephenson alleges that the ALJ erred by failing to find that he had a severe cognitive impairment and further develop the record related to that impairment. Doc. No. 13 at 3. He notes that the record contains documentation that he was in special education throughout school after he suffered spinal meningitis at a young age. He had a speech impediment, slow mentation and experienced difficulties with reading and comprehension. *Id.* at 3-4. He also argues he has a reasoning-level limitation and is likely limited to Reasoning Level 1 jobs.

Stephenson argues that the failure to recognize these cognitive impairments is problematic because the ALJ relied on the opinions of the state agency consultants who noted that the record was absent of any reports of special education. *Id.* at 5 (citing AR 50-51). However, Stephenson's special education records were in the administrative record at the time of the ALJ's decision. Stephenson argues these errors cannot be considered harmless because the jobs identified by the ALJ at Step Five conflict with Stephenson's mental limitations, particularly his difficulties with reading and writing. *Id.*

8

at 6-7. He argues the case should be remanded for further development as to how his cognitive impairments impact his ability to work.

The Commissioner argues the ALJ considered Stephenson's cognitive impairments and determined that a consultative examination was unnecessary. Doc. No. 14 at 4-5. He notes that despite Stephenson's spinal meningitis, he was able to successfully perform unskilled and semi-skilled work for many years before he stopped working due to a hip injury. *Id.* at 5. Indeed, two months after his right hip fracture and open reduction internal fixation in March 2013, he returned to work through January 2015. *Id.* (citing AR 173, 439, 531-32, 534). The Commissioner also notes that despite Stephenson's alleged speech deficits, he was asked only to repeat a word on two occasions during his hearing testimony. *Id.* He contends Stephenson's ability to work for years despite his alleged cognitive impairment undermines his allegations that such an impairment is disabling. *Id.*

With regard to the reasoning level of the jobs identified by the VE and accepted by the ALJ, the Commissioner notes that Stephenson's past work involved Reasoning Level 2. Because Stephenson does not allege any recent deterioration of his alleged cognitive impairment or offer any explanation as to why he should now be limited to Reasoning Level 1 jobs, the Commissioner argues the ALJ's Step Five determination is supported by the record. In reply, Stephenson relies on the old Listing 12.05C, which he contends recognized that when individuals with lower IQ scores and cognitive abilities often have a desire to work and can perform beyond their mental RFC for a period, another additional impairment (such as Stephenson's hip fracture) will often make it more difficult to work. *See* Doc. No. 15 at 2.

At Step Two, the ALJ must consider whether a medically determinable impairment is "severe." 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is one which "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Basic work activities include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; capacities for

9

seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b). If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two. *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007). It is the claimant's burden to establish that his or her impairment or combination of impairments is severe. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000). "Severity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard . . . ." *Kirby*, 500 F.3d at 708 (internal citation omitted).

In determining whether a claimant's mental impairments are "severe," the regulations require the ALJ to consider "four broad functional areas in which [the ALJ] will rate the degree of [the claimant's] functional limitations: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. § 404.1520a(c)(3). This is referred to as the psychiatric review technique. If the degree of limitation in the first three functional areas is "none" or "mild" and there are no episodes of decompensation, then the ALJ should conclude that it is a non-severe impairment unless the evidence indicates otherwise. *Id.* § 404.1520a(d)(1). A "severe" impairment is one that significantly limits the claimant's physical or mental ability to perform basic work activities. *See* 20 C.F.R. §§ 404.1521, 404.1529.

Here, the ALJ did not even reach the question of whether Stephenson's alleged cognitive deficits were "severe" or "nonsevere" because the initial decision and decision on reconsideration found that Stephenson did not have a medically determinable impairment (MDI) related to his alleged "brain damage." The initial disability determination states:

> The claimant completed the 12th grade without special education services, has been employed on multiple occasions and denies any difficulties with concentration, maintaining attention, or following written/spoken

> instructions. 3p[2] offers he doesn't have the comprehension to follow instructions and his ability to pay attention depends on the subject.
>
> The claimant lives independently, performs household chores, shops for his needs, and prepares simple meals. He further reports getting along with authority figures well and has never been fired from a job. At the time of his physical exam in 3/2015 no psychological or neurological problems were noted or observed. ES opined he would be capable of handling benefits should they be rewarded. Review of the medical evidence for his physical impairments do not show any difficulties or concerns related to his mental health.
>
> Contact was made with the claimant regarding his 'brain damage' he denies this has impacted him from working as he has worked in the past, but is unable to now due to his physical limitations.
>
> There is no MDI to support the allegation of brain damage. Upon contact with the claimant he doesn't feel he is limited mentally as he has held jobs in the past. Therefore a CE[3] will not be purchased to establish an MDI at this time. It is likely based on the function reports and other evidence if he was examined it would not result in any marked limitations.

AR 51. Thus, no psychiatric review technique was performed by the state agency consultants and the ALJ's decision contains no discussion or acknowledgment of this alleged impairment. AR 15-22. *See* 20 C.F.R. § 404.1545 ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe' . . . when we assess your residual functional capacity."); SSR 96-8p ("[I]n assessing RFC, the adjudicator must consider only limitations and restrictions attributable to medically determinable impairments."); *see also Ray v. Colvin*, 657 F. App'x 733, 734 (10th Cir. 2016) ("[T]he

---

[2] "3p" appears to refer to "third party" reports provided by Stephenson's mother and others. *See* AR 189-96, 290-92.

[3] "CE" refers to "consultative examination."

11

ALJ is only required to consider medically determinable impairments in the RFC at step four, whether severe or not . . . .").

A medically determinable impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). It appears that Stephenson's school records documenting his special education classes (and containing medically acceptable clinical and laboratory diagnostic techniques) were not in the record at the time of the initial disability determination, *see* AR 48-49, and were likely not submitted on reconsideration. Nonetheless, the opinion by the state agency consultant on reconsideration was:

> This claimant files for reconsideration of his disability claim. He does not allege any specific changes or worsening to his mental condition. He has not sought treatment for mental health since the initial claim was reviewed. All evidence has been reviewed and the initial assessment remains appropriate and is affirmed as written.

AR 62.

The determination that "[t]here is no MDI to support the allegation of brain damage" is flawed because it was based, in part, on the inaccurate findings that (1) Stephenson did not attend any special education classes in school and (2) there is no mention in the medical records of any concerns or issues related to his mental health. While that may have been true at the time of the initial disability determination and reconsideration, it was not true at the time of the ALJ's decision, as explained below.

Exhibit 1E contains a Disability Report dated June 12, 2015, in which Stephenson indicated that he completed the 12th grade, attended special education classes and listed the school and dates he attended special education classes (1991-1994). AR 174. This exhibit was received into evidence by the ALJ. AR 30. The disability office contacted Stephenson on July 15, 2015, and made the following note in his file: "the claimant does not feel he is limited mentally, no report of special ed, has worked in the past. he [sic] cannot work due to his hip." AR 50. It is unclear whether the state agency consultants

reviewed the Disability Report received as Exhibit 1E, but it appears they relied on this note in the file to conclude he did not attend special education classes. Another Disability Report (Exhibit 10E) submitted on appeal on November 2, 2015, with the assistance of counsel states: "He was in special education his entire schooling. He has trouble with reading and comprehension." AR 219. This exhibit was also received into evidence by the ALJ. AR 30.

Stephenson's education records are included in Exhibit 12E. The ALJ received this exhibit into evidence. AR 30. While some of the notes are difficult to read, a record from September 25, 1992, states Stephenson had been in special education at a previous school "probably since first grade." AR 264. Another note dated December 4, 1992, indicates the "primary disability to be continued" is "mental disability" and the secondary disability/disabilities to be continued" is "speech/language." AR 259. It states that projectives indicated him to have "difficulty in social settings, and behaviors interfering with learning, such as poor work habits, difficulty following directions and weak levels of performance." *Id.* Testing that day revealed that he was operating in the area of "mild mental disability." *Id. See also* AR 270 (noting that latest testing revealed he had a higher IQ than students typically in need of mental disability programming, but was identified as learning disabled in need of self-contained programming). The ALJ also received Exhibit 9F into evidence, containing treatment notes that comment on Stephenson's cognitive impairments. *See* AR 503 ("He has a learning disability from having spinal meningitis at the age of 3 months . . . He was in special ed classes all through school."); AR 505 ("His mentation is quite dull and slow. He has a speech impediment."); AR 518 ("Mentation is slow.").

Based on this record, it is clear that Stephenson's initial disability determination was flawed, as it was based on inaccurate and incomplete information. Thus, I find this matter must be remanded to the ALJ to reconsider whether Stephenson has a medically determinable mental impairment, whether it is severe or nonsevere, and what limitations, if any, result from that impairment. I note that further development of the record may

be necessary, including possibly returning the case to the state agency and/or obtaining a consultative examination to obtain an opinion based on the application of the psychiatric review technique in the event it is determined that Stephenson has a medically determinable impairment. *See* 20 C.F.R. § 404.1520a (noting that in evaluating the severity of mental impairments, "we must follow a special technique at each level in the administrative review process" and that "[i]f the [ALJ] requires the services of a medical expert to assist in applying the technique but such services are unavailable, the [ALJ] may return the case to the State agency or the appropriate Federal component, using the rules in § 404.941 of this part, for completion of the standard document."). If Stephenson's alleged cognitive deficits are determined to be a medically determinable impairment, the ALJ may need to conduct a new RFC determination and obtain new testimony from a VE regardless of whether the impairment is severe or nonsevere. *See Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)) (noting that in determining the claimant's RFC, the ALJ must consider the combined effects of both the severe and nonsevere medically determinable impairments).

While I find that remand is necessary on this issue, I will consider Stephenson's additional arguments to determine whether the ALJ should consider other issues on remand as well.

### B. Dr. Manshadi's Opinions

Stephenson argues the ALJ failed to adopt all limitations identified by Dr. Manshadi despite giving his opinion great weight. Doc. No. 13 at 8-9. Specifically, Stephenson alleges the ALJ should have adopted the limitation that he be allowed to sit for about an hour and then be allowed to stand. *Id.* (citing AR 535). He contends this limitation is consistent with the record and it is unclear from the VE's testimony whether the jobs identified would allow for a limitation regarding the need to alternate positions every hour. He requests the matter be remanded for the ALJ to consider such a limitation in the RFC.

14

The Commissioner argues the ALJ properly considered Dr. Manshadi's opinion and was not required to adopt all limitations identified therein. Doc. No. 14 at 6-7. The Commissioner contends the ALJ's analysis provides ample reasons for discounting a limitation requiring alternating positions. He notes that the ALJ observed that Stephenson's right hip pain significantly improved after surgery and that Stephenson had returned to his work as a fork lift operator two months after his hip injury. *Id.* at 9. The ALJ also cited 2016 evidence that Stephenson had a normal gait, pain with hip motion, normal range of motion, no pain with straight leg raising and 5/5 lower extremity strength. *Id.* The ALJ also gave great weight to the state agency medical consultants' opinions who found Stephenson could sit six hours and stand/walk two hours in an eight-hour workday. He contends the evidence does not support a need to alternate positions every hour. *Id.*

Dr. Manshadi is a one-time examining source. He performed his examination for purposes of an independent medical examination for Stephenson's workers' compensation claim. His recommendations for restrictions included:

> No lifting of more than 20 to 30 pounds with both hands; avoiding repetitious bending or stooping at his waist; avoid prolonged stand or sitting. For example, he should be allowed to sit for about an hour and then be allowed to stand. Also no extended walking for over 2 hours.

AR 535. The ALJ's RFC determination includes lifting and carrying 20 pounds occasionally and 10 pounds frequently, standing and walking up to two hours in an eight-hour workday and sitting up to six hours in an eight-hour workday. AR 18. The ALJ stated the following with regard to Dr. Manshadi's opinion:

> As for the opinion evidence, Farid Manshadi, M.D., completed a Functional Capacity Evaluation and impairment rating in September 2014, where he opined that the claimant can lift up to 20 to 30 pounds, must avoid repetitive stooping at the waist, avoid prolonged standing or sitting, and no extended walking for over 2 hours. These limitations are given great weight because Dr. Manshadi is an examining medical source and they are generally consistent with the claimant's history of right fractured hip, which causes some residual pain but has significantly improved since surgery, as

15

> discussed above. For example, at several visits with his primary care provider throughout 2016, the claimant demonstrated a normal gait, pain with hip motion, normal range of motion of the right leg, no pain with straight leg raise, decreased right foot sensation at one visit, and 5/5 strength in the lower extremities. The undersigned notes that consultative examiner Dr. Schultes did not provided [sic] any medical opinion or assessment of functioning, but the undersigned has given full consideration to his clinical findings herein.

AR 20 (internal citations omitted). The ALJ made no mention of a need to shift positions and his RFC determination does not include any limitations related to the need to avoid prolonged sitting and standing beyond the total amount of time that Stephenson could be expected to do both in an eight-hour workday.

Social Security Ruling 83-12 provides:

> In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing. The individual may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting. Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work. (Persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work.)
>
> There are some jobs in the national economy--typically professional and managerial ones--in which a person can sit or stand with a degree of choice. If an individual had such a job and is still capable of performing it, or is capable of transferring work skills to such jobs, he or she would not be found disabled. However, most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a

> certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or stand, a VS should be consulted to clarify the implications for the occupational base.

Social Security Ruling 83-12, 1983 WL 31253, at *4 (Jan. 1, 1983). Social Security Ruling 96-9p also addressed a claimant's need to alternate between sitting and standing. It states:

> An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically. Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded. The extent of the erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand. The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing. It may be especially useful in these situations to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work.

Social Security Ruling 96-9p, 1996 WL 374185, at *7 (July 2, 1996).

Stephenson alleged in his function report that he cannot stand or sit for long periods of time. AR 198. At the hearing, he testified that he could sit for an hour and a half at a time and walk for an hour at a time. AR 33-34. The ALJ acknowledged this testimony in his decision and essentially discredited it based on the objective medical evidence, Stephenson's daily activities and the opinions of the state agency consultants. AR 18-20. While Stephenson does not challenge the ALJ's credibility finding as to his subjective complaints, but only the ALJ's evaluation of Dr. Manshadi's opinion, I find that the ALJ's decision sheds light on what limitations the ALJ found credible with regard to both. While it would have been preferable for the ALJ to address this precise limitation in Dr. Manshadi's opinion, the ALJ is not required to discuss every piece of evidence that was submitted and an ALJ's failure to cite specific evidence does not indicate that

such evidence was not considered. *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998). In discussing the medical evidence, the ALJ noted that physical examinations following his hip surgery were largely normal, a provider noted that the hip "does not appear painful with walking or weightbearing," his treatment consisted of over-the-counter medications as necessary and an orthopedist recommended home exercises and that Stephenson return to work. AR 19. The ALJ concluded:

> The clinical findings and routine treatment described above are not consistent with debilitating hip and leg pain. In limiting the claimant to less than the full range of sedentary work with postural limitations, the undersigned has adequately addressed the claimant's residual right hip and leg pain.

*Id.* Because it is clear from the ALJ's decision that he did not credit a claimed limitation of the need to alternate positions (whether it came from Dr. Manshadi or from Stephenson), and he provided good reasons in support of that position that are supported by substantial evidence in the record, I find that the ALJ need not reconsider this aspect of his decision on remand.

## C. *Appointments Clause Challenge*

Finally, Stephenson argues the ALJ's decision should be vacated and the case remanded because the ALJ was an inferior officer who was not appointed in compliance with the Appointments Clause.[4] Doc. No. 13 at 9-23. Stephenson did not raise this argument in front of the ALJ, nor the Appeals Council, but argues that it is timely because there is no issue exhaustion requirement for nonadversarial disability hearings and even if there was, the constitutional claims exception and the futility exception apply. *Id.* at 12-17. In the alternative, Stephenson argues that I should exercise discretionary review

---

[4] This Clause provides that principal officers must be appointed by the President with the advice and consent of the Senate and that inferior officers be appointed by "the President alone, . . . the Courts of Law, or . . . the Heads of Departments." U.S. Const. art. II, § 2, cl. 2.

authority pursuant to *Freytag v. Comm'r*, 501 U.S. 868, 878-79 (1991). *Id.* at 17-19. The Commissioner argues Stephenson failed to raise his Appointments Clause challenge at any point in the administrative process and that I should reject his challenge on this basis. Doc. No. 14 at 10. He cites numerous district court cases that have reached a similar conclusion. *Id.* at 11, n.5.

Stephenson's challenge is based on *Lucia v. SEC*, 138 S. Ct. 2044 (2018). In that case, the Court held that ALJs for the Securities and Exchange Commission (SEC) are "inferior officers" subject to the Appointments Clause as they "exercise[] significant authority pursuant to the law of the United States." *Lucia*, 138 S. Ct. at 2051. The Court found that Lucia was entitled to a new administrative hearing in front of a properly-appointed ALJ noting that he had raised a "timely challenge" before the administrative agency. *Id.* at 2055. While Lucia did not raise his Appointments Clause challenge to the ALJ, he did raise it in his appeal to the SEC. *Id.* at 2050.

Stephenson acknowledges I have previously addressed this issue and held that Social Security "claimants have forfeited the Appointments Clause issue by failing to raise it during administrative proceedings." *Stearns v. Berryhill*, No. 17-2031, 2018 WL 4380984, at *5-6 (N.D. Iowa Sept. 14, 2018). *See also Thomas v. Saul*, No. C18-2038-LTS, 2019 WL 4246691, at *9 (N.D. Iowa Sept. 6, 2019); *White v. Comm'r of Soc. Sec.*, No. C18-2005-LTS, 2019 WL 1239852, at *4 (N.D. Iowa Mar. 19, 2019). I have previously encountered many of the arguments Stephenson makes in his brief and have not found them persuasive. *See Thomas*, 2019 WL 4246691, at *9.

I decline to vacate the ALJ's decision on this basis and find that because Stephenson did not raise an Appointments Clause issue before or during the ALJ's hearing or before the ALJ's decision became final, he has forfeited the issue for consideration on judicial review. However, because I find the case should be remanded to determine whether Stephenson's alleged cognitive deficits amount to a medically determinable impairment, the Commissioner will have the opportunity to select the appropriate ALJ to review this issue and Stephenson may raise any Appointments Clause challenge he may

19

have at that time. *See Mann v. Berryhill*, No. 4:18-CV-3022, 2018 WL 6421725, at *8 (D. Neb. Dec. 6, 2018); *Dyslin v. Comm'r of Soc. Sec.*, No. 18-CV-0014-LTS, 2019 WL 2219004 at *14 (N.D. Iowa Feb. 22, 2019); *Anderson v. Comm'r of Soc. Sec.*, No. 18-cv-24-LRR, 2019 WL 1212127, at *5 (N.D. Iowa Feb. 19, 2019).

## VI. CONCLUSION

For the reasons set forth herein:

1. The Commissioner's determination that Stephenson was not disabled is **reversed** and this matter is **remanded** to the Commissioner for further proceedings consistent with this opinion.

2. Judgment shall enter against the Commissioner and in favor of Stephenson.

3. If Stephenson wishes to request an award of attorney's fees and costs under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412, an application may be filed up until 30 days after the judgment becomes "not appealable," i.e. 30 days after the 60-day time for appeal has ended. *See Shalala v. Schaefer*, 509 U.S. 292, 296 (1993); 28 U.S.C. §§ 2412(d)(1)(B), (d)(2)(G).

**IT IS SO ORDERED.**

**DATED** this 26th day of September, 2019.

_____
Leonard T. Strand, Chief Judge